IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION NO. 2:21-cv 408-RAH-SRW |
| $386,680.13 IN LIEU OF ONE PARCEL OF PROPERTY LOCATED AT 109 SOUTH CARDINAL HEIGHTS, DADEVILLE, TALLAPOOSA COUNTY, ALABAMA | ) ) ) ) ) ) |
| Defendant. | ) |

**VERIFIED COMPLAINT FOR FORFEITURE IN REM**

Plaintiff, The United States of America, by and through Sandra J. Stewart, Acting United States Attorney, Middle District of Alabama, and Gregory O. Griffin, Jr., Assistant United States Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

**NATURE OF THE ACTION**

1. This is a civil action in rem to forfeit and condemn the defendant to the United States, pursuant to 18 U.S.C. § 981(a)(1)(A), (C), and (D)(v) and (vi) for violations of 18 U.S.C. §1341 (mail fraud), §1343 (wire fraud), §1347 (health care fraud), §§ 1956 and 1957(a) (money laundering), and 42 U.S.C. § 1320a-7(b) (federal anti-kickback statute), in pertinent part:

   (a)(1)  The following property is subject to forfeiture to the United States:

   (A)  Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property;

   (C)  Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of

this title), or a conspiracy to commit such offense. [Mail and Wire Fraud are offenses which constitute "specified unlawful activity."];

(D)  Any property, real or personal, which represents or is traceable to the gross receipts obtained, directly or indirectly, from a violation of-......;
(v) section 1341 (relating to mail fraud); or
(vi) section 1343 (relating to wire fraud).

## THE DEFENDANT IN REM

2. The defendant in this action is $386,680.13 in lieu of one parcel of real property located at 109 South Cardinal Heights, Dadeville, Tallapoosa County, Alabama, more particularly described here as follows:

> Lot #13, Cardinal Heights, Still Waters, as the same is described in Plat Book 7, Page 80, subject to the Amended and restated Declaration of Restrictions and Protective Covenants for Still Waters recorded on Card No. 041595, in the Office of the Judge of Probate of Tallapoosa County, Alabama, which description and protective covenants are incorporated herein by reference as if set forth in full. In accordance with the provisions of Article III, Section 3.1 of the above cited covenants, the minimum square footage for the home on this lot is specified as 1,250 square feet and the maximum number of bedrooms is four (4). Also subject to a boundary line agreement recorded on Card No. 044023, in the Office of the Judge of Probate of Tallapoosa County, Alabama.
>
> Prior Deed Reference: Card No. 299201.

3. The defendant property has not been seized and is located in the Trust Account of Attorney J. Doyle Fuller, counsel for David G. Saalwaechter and Theresa S. Saalwaechter.

## JURISDICTION AND VENUE

4. The United States brings this action *in rem* in its own right to forfeit and condemn the defendant property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

5. This Court has *in rem* jurisdiction over the defendant property under 28 U.S.C. §§ 1355(b)(1)(A) and 1355(d).

6. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A), because the acts or omissions giving rise to the forfeiture occurred in this district.

## BASIS FOR FORFEITURE

7. The United States brings this action in rem, in its own right to forfeit and condemn the Defendants under 18 U.S.C. §§ 981(a)(1)(A), (C), (D)(v) and (vi).

8. The United States seeks to forfeit the defendant because the defendant represents or is traceable to the gross receipts obtained, directly or indirectly, from violations of 18 U.S.C. §1341 (mail fraud), §1343 (wire fraud), §1347 (health care fraud), §§ 1956 and 1957(a) (money laundering), and 42 U.S.C. § 1320a-7(b) (federal anti-kickback statute), which states:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier . . . or affect a financial institution, . . .shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both. **18 U.S.C. § 1341**.

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or caused to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, . . .or affect a financial institution, . . . shall be fined $1,000,000 or imprisoned not more than 30 years, or both. **18 U.S.C. § 1343**.

> Whoever knowingly executes, or attempts to execute, a scheme or artifice-
> (1) to defraud any health care benefit program; or
> (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned

by, or under the custody or control of, any health care benefit program,
in connection with the delivery of or payments for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both.
**18 U.S.C. § 1347.**

(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—
(A)(i) with the intent to promote the carrying on of specified unlawful activity; or
(ii) with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or
(B) knowing that the transaction is designed in whole or in part—
(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or
(ii) to avoid a transaction reporting requirement under State or Federal law,
shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both. For purposes of this paragraph, a financial transaction shall be considered to be one involving the proceeds of specified unlawful activity if it is part of a set of parallel or dependent transactions, any one of which involves the proceeds of specified unlawful activity, and all of which are part of a single plan or arrangement.
(2) Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States—
(A) with the intent to promote the carrying on of specified unlawful activity; or
(B) knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part—
(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or

(ii) to avoid a transaction reporting requirement under State or Federal law,

shall be sentenced to a fine of not more than $500,000 or twice the value of the monetary instrument or funds involved in the transportation, transmission, or transfer, whichever is greater, or imprisonment for not more than twenty years, or both. For the purpose of the offense described in subparagraph (B), the defendant's knowledge may be established by proof that a law enforcement officer represented the matter specified in subparagraph (B) as true, and the defendant's subsequent statements or actions indicate that the defendant believed such representations to be true.

(3) Whoever, with the intent—

(A) to promote the carrying on of specified unlawful activity;

(B) to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity; or

(C) to avoid a transaction reporting requirement under State or Federal law,

conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both. For purposes of this paragraph and paragraph (2), the term "represented" means any representation made by a law enforcement officer or by another person at the direction of, or with the approval of, a Federal official authorized to investigate or prosecute violations of this section. **18 U.S.C. § 1956.**

Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be . . .fined [$250,000] or imprison[ed] for not more than ten years or both. **18 U.S.C. § 1957(a).**

(b) Illegal remunerations

(1) Whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind—

(A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

5

(B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,

shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

(2) Whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—

(A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole

or in part under a Federal health care program, or

(B) to purchase, lease, order, or arrange for or recommend purchasing, leasing,

or ordering any good, facility, service, or item for which payment may be made

in whole or in part under a Federal health care program, shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both. **42 U.S.C. § 1320a-7(b).**

## FACTS GIVING RISE TO FORFEITURE

**Background of Persons and Entities Involved**

9. The targets of this investigation are DAVID SAALWAECHTER (hereafter "D. Saalwaechter"); MARC BATSON (hereafter "M. Batson"); LISA BATSON (hereafter "L. Batson"); CARL EDMISTON (hereafter "C. Edmiston"); BART EDMISTON (hereafter "B. Edmiston"); TODD EDMISTON (hereafter "T. Edmiston"); ALISON EDMISTON (hereafter "A. Edmiston); LOUIS O. PRIESTER, III (hereafter "L. Priester, III"); LISA PRIESTER (hereafter "L. Priester"); BRENT CHERRY (hereafter "B. Cherry"); JOY CHERRY (hereafter "J. Cherry"); CLOVERLAND DRUGS, INC. AKA CLOVERLAND PHARMACY; WR83, LLC; RHYOLITE INVESTMENTS, LLC; and, CJE ENTERPRISES, LLC.

6

10. *D. Saalwaechter* is a male who resides at 339 Aqui Lane, Pike Road, Alabama. D. Saalwaechter was the owner of Cloverland Drugs, Inc. D. Saalwaechter is a pharmacist registered with the Alabama State Board of Pharmacy.

11. *M. Batson* is a male who resides at 2262 Locke Circle, Hoover, Alabama 35226. M. Batson was an employee of Cloverland Drugs, Inc.

12. *L. Batson* is a female who resides at 231 Shore Front Lane, Wilsonville, Alabama 35186. L. Batson is the daughter of D. Saalwaechter and was employed as the manager of Cloverland Drugs, Inc.

13. *C. Edmiston* is a male who resides at 5760 Keystone Road, Pensacola, Florida 32504. C. Edmiston was listed as registered agent and manager of Rhyolite Investments, LLC, a Florida corporation and CJE Enterprises, LLC a Florida corporation.

14. *B. Edmiston* is a male who resides at 607 Rue Dauphine, Ocean Springs, Mississippi 39564. B. Edmiston is a physician licensed to practice in the State of Mississippi.

15. *T. Edmiston* is a male who resides at 104 Savannah Square, Fairhope, Alabama 36532. T. Edmiston is a physician licensed to practice in Alabama by the Alabama Board of Medical Examiners.

16. *A. Edmiston* is a female who resides at 104 Savannah Square, Fairhope, Alabama 36532 with her husband T. Edmiston. A. Edmiston is the incorporator of Driftwood Creek, LLC and Wolf Creek, LLC, Alabama limited liability corporations.

17. *L. Priester, III* is a male who resides at 5821 Rivenbark Lane, Fairhope, Alabama 36532. L. Priester is the owner of WR83, LLC, an Alabama limited liability corporation, and is a member of Touchdown Supply, LLC which was dissolved in 2018.

18.   *L. Priester* is a female who resides at 5821 Rivenbark Lane, Fairhope, Alabama with her husband, L. Priester III. L. Priester is the manager for WR83, LLC.

19.   *B. Cherry* is a male who resides at 8455 Marsh Pointe Drive, Montgomery, Alabama 36117. B. Cherry is employed with Blue Cross Blue Shield of Alabama.

20.   *J. Cherry* is a female who resides at 8455 Marsh Pointe Drive, Montgomery, Alabama 36117 with her husband B. Cherry. J. Cherry received a IRS Form 1099 from Cloverland Drugs, Inc. J. Cherry is a registered pharmacist with the Alabama State Board of Pharmacy.

21.   *Cloverland Drugs, Inc.* is an Alabama registered corporation with a business address of 7037 Tifton Ave., Montgomery, AL 36116. According to the Alabama Secretary of State records, Cloverland Drugs, Inc. is engaged in pharmaceutical sales and distribution.

22.   *WR83, LLC* is an Alabama registered corporation with a business address of 5821 Rivenbark Lane, Fairhope, Alabama 36532. According to the Alabama Secretary of State records, Louis Priester III is identified as the Registered Agent and Organizer. According to the Alabama Secretary of State's Office, WR83, LLC is engaged in the management of real property.

23.   *Rhyolite Investments, LLC*, was a Florida registered corporation with a business address of 5760 Keystone Road, Pensacola, Florida 32504. According to the Florida Secretary of State records, Rhyolite Investments, LLC was voluntarily dissolved on 6/24/2017. Carl Edmiston was listed as the Registered Agent and Managing Member of the LLC.

24.   *CJE Enterprises, LLC.* is a Florida registered corporation. According to the Florida Secretary of State records, CJE Enterprises, LLC was voluntarily dissolved on 1/14/2018. Carl Edmiston was listed as the Registered Agent and Managing Member of the LLC.

25.   *Touchdown Supply, LLC* was an Alabama limited liability company (LLC) incorporated on July 15, 2014. According to the Alabama Secretary of State records, Touchdown

8

Supply, LLC was dissolved on 11/2/2018. Lou Priester was listed as Registered Agent with Organizers listed as Louis Priester and Carl Edmiston.

**Summary of the Scheme**

26.     The above individuals and entities were engaged in fraudulent claims submission schemes and kickbacks from approximately July 2014 through June 2016. Cloverland Drugs, Inc., WR83, LLC and Rhyolite Investments, LLC facilitated "kickback" payments to doctors who prescribed drugs which were filled by Cloverland Drugs, Inc. and paid for by TriCare, a federal benefit program.

27.     M. Batson is believed to have recruited individuals to obtain compounding prescriptions in exchange for payment. M. Batson would instruct the individuals to text him a photo of their insurance card. M. Batson would text the insurance information to L. Batson, who would initiate a claim with the insurance information to verify that their insurance company would reimburse the claim. If L. Batson confirmed the insurance company would reimburse the claim, M. Batson would instruct the recruited individual to take a pre-made Cloverland Drugs, Inc. form to their doctor to obtain a prescription for the drug. Once Cloverland Drugs, Inc. was reimbursed by the insurance company, M. Batson would pay the recruited individual for obtaining the prescription.

28.     This investigation focused on claims made by Cloverland Drugs, Inc. to Tricare and affiliates of Blue Cross Blue Shield network. TriCare is a health care benefit program for Service Members of the U.S. military (active, Guard/Reserve, or retired) and their families. It is managed by the Defense Health Agency at the U.S. Department of Defense. The targets opened accounts at a number of different banks and credit unions in which the proceeds from the fraudulent claims were deposited.

29. An FBI review of claims data provided by Prime Therapeutics revealed the Blue Cross Blue Shield network paid $29,073.85 in claims submitted by Cloverland Drugs, Inc. on behalf of an individual working as a Confidential Witness (CW) between May 28, 2015 and July 30, 2015.

30. On April 26, 2016, the CW was interviewed by the FBI. The CW owns and operates a gym in Montgomery, Alabama where M. Batson used to frequent. M. Batson approached the CW about obtaining a pain cream for use by the CW. The CW submitted insurance information for himself/herself and family members. M. Batson advised the CW he would pay him/her for any other individuals the CW recruited to obtain prescriptions for the drugs. The CW received packages every month containing the pain cream and scar cream. The CW had approximately 30 boxes containing tubes of unused cream at the CW's home. The CW informed M. Batson that he no longer needed the cream. M. Batson told the CW to throw it away and advised the CW there was no co-pay for the prescriptions.

31. An FBI review of M. Batson's Wells Fargo bank records revealed ten checks from Cloverland Drugs, Inc. deposited between June 29, 2015 and February 16, 2016 for a total of $162,551.94, all signed by D. Saalwaechter. The review of the account also reflected seven checks written to the CW between July 11, 2015 and January 16, 2016 for a total of $31,796.25. A notation on the checks showed the checks to the CW were for "Cloverland".

32. An FBI review of claims data showed Cloverland Drugs, Inc. was paid $8,957,627.30 by TriCare from January 1, 2012 to May 12, 2016 and $2,015,300.12 by the affiliates of the Blue Cross Blue Shield network from January 7, 2013 to May 9, 2016.

33. An FBI review of claims data provided by TriCare indicated over 1,000 prescriptions had been written by B. Edmiston, which were processed by Cloverland Drugs, Inc. between August 25, 2014 and May 12, 2016 totaling $1,618,973.39.

34. An FBI review of claims data provided by TriCare indicated 60 prescriptions had been written by T. Edmiston, which were processed by Cloverland Drugs, Inc. between June 23, 2014 and May 6, 2016 totaling $125,346.05.

35. J. Cherry received an IRS Form 1099 from Cloverland Drugs, Inc. and her husband, B. Cherry, is employed by Blue Cross Blue Shield of Alabama, an insurance provider which paid claims filed by Cloverland Drugs, Inc. J. Cherry's brother is L. Priester, III, the owner of WR83, LLC.

36. Pursuant to a Grand Jury subpoena, Blue Cross Blue Shield provided numerous e-mail exchanges between B. Cherry, L. Priester, L. Priester III, J. Cherry and D. Saalwaechter between April 15, 2015 and September 10, 2015. These emails detail a sales group associated with "Cloverland Drugs." The e-mails identified company members within the sales group and listed them as Extraordinary Scripts, In Focus Healthcare Consult, WR83 Apex, WR83 Commander, The Stratton Group, Topical Sales Group, O'Crowley Management. The e-mails indicated J. Cherry received up to a 10% professional fee for any revenue these companies produced. During a specific e-mail exchange between B. Cherry, J. Cherry, L. Priester and L. Priester III, L. Priester sent a sales spreadsheet labeled "Commander August Payouts 2015" to J. Cherry on September 10, 2015. J. Cherry forwarded the email exchange to B. Cherry. The spreadsheet listed sales figures detailing J. Cherry's professional fee for revenue generated by WR83 Commander group. The spreadsheet detailed a list of patients who were prescribed drugs between August 6, 2015 and August 28, 2015. In addition, the spreadsheet identified the prescriber of the drugs as well as the

insurance provider paying for the prescription. The spreadsheet detailed 70 prescriptions which represented a billed amount of $60,556.67. Fifty-six (56) of the seventy (70) prescriptions were billed to government insurance programs, such as TriCare and Medicare. Sixty-three (63) of the prescriptions were written by B. Edmiston and five (5) of the seventy (70) prescriptions were written by T. Edmiston. The letters "WR/CB" are listed in the "rep" column for prescriptions written by B. Edmiston and the letters "WR/CT" are listed in the rep column for prescriptions written by T. Edmiston. "WR" is an abbreviation for WR83, C stands for Carl Edmiston, T for Todd Edmiston, and B for Bart Edmiston. The spreadsheet represented revenue that Cloverland Drugs had generated because of prescriptions written by B. Edmiston and T. Edmiston. The spreadsheet was used to determine the amount of "kickback" money owed to T. Edmiston and B. Edmiston.

37. The Defendant represents proceeds from David Saalwaechter, Marc Batson, Lisa Batson, Carl Edmiston; Alison Edmiston; Bart Edmiston; Todd Edmiston; Louis O. Priester, III; Lisa Priester; Joy Cherry; and, their associated businesses, Cloverland Drugs, Inc., (aka Cloverland Pharmacy); WR83, LLC; RHYOLITE Investments, LLC; and, CJE Enterprises, LLC's illegal activities.

**Purchase and Sale of 109 S. Cardinal Heights, Dadeville, Alabama**

38. On or about June 15, 2015, D. Saalwaechter caused to be wired from the Cloverland Drugs, Inc. bank account (account ending in 0558) maintained at Sterling Bank, a $10,000.00 wire to US Ameribank to the beneficiary account of Lake Martin Realty, LLC escrow account. On or about June 25, 2015, D. Saalwaechter caused to be wired from the Cloverland Drugs, Inc., bank account (account ending in 0558) maintained at Sterling Bank, a $829,545.42 wire to US Ameribank to the beneficiary account of Donald Harrison Escrow IOLTA. On or about June 26,

2015, Guy Craig Alexander and Susan P. Alexander transferred Lot #13, Cardinal Heights, Still Waters, commonly known as 109 S. Cardinal Heights, Dadeville, Alabama to "Coverland (sic Cloverland) Drug, Inc.", P.O. Box 240817, Montgomery, Al 36124, for $100.00 and other valuable considerations. The deed was prepared by Donald R. Harrison, P.O. Box 157, Dadeville, AL 36853, and was recorded on 7/6/2015, document number 299201. Also recorded with the Deed was a Real Estate Sales Validation Form which listed the Property Address as 109 S. Cardinal Heights, Dadeville, AL 36853, the "Date of Sale" as June 26, 2015, and purchase price of $839,000.00. The closing statement (HUD-1) was prepared by attorney Donald R. Harrison and signed by D. Saalwaechter, as President of Cloverland Drugs, Inc.

39. On or about February 26, 2016, D. Saalwaechter, as President of Cloverland Drugs, Inc., executed a Warranty Deed, Jointly for Life with Remainder to David G. Saalwaechter and wife Theresa S. Saalwaechter, for $100.00 and other valuable considerations the property commonly known as 109 S. Cardinal Heights, Dadeville, Alabama. The deed was prepared by Donald R. Harrison, P.O. Box 157, Dadeville, AL 36853, and was recorded on 3/4/2016, document number 304699. Also recorded with the Deed was a Real Estate Sales Validation Form which listed the property address as 109 S. Cardinal Heights, Dadeville, AL 36853, the Date of Sale as 2/26/2016, and the Total Purchase Price of $844,000.00. The form indicated the purchase price was obtained from an appraisal.

40. On or about February 26, 2016, following the transfer of property from Cloverland Drugs, Inc., to the Saalwaechters, the Saalwaechters executed a Mortgage (document number 304700) with Regions Bank d/b/a/ Regions Mortgage in the amount of $417,000.00. The mortgage identified the property as 109 S. Cardinal Heights, Dadeville, AL 36853. The transaction was treated as a "refinance transaction" by the closing attorney on the Closing Disclosure statement.

After deduction of the loan closing costs totaling $11,116.02, a cash balance was due to the borrower in the amount of $406,865.89. The closing attorney wired from his account on February 26, 2016, $406,865.89 to the Cloverland Drugs, Inc. account maintained at Sterling Bank (account ending in 0558).

41. On September 30, 2016, real property located at 109 S. Cardinal Heights, Dadeville, Alabama was transferred by Warranty Deed to Mitzy Hidding, 7985 Saddle Ridge Drive, Sandy Springs, Georgia 30550 pursuant to a sales agreement between the Saalwaechters and Hidding totaling $850,000.00. The sales price of the property was $850,000.00 with prepaids and taxes prorated between the seller and buyer (a net amount of $146.87 was due to the seller). Closing costs paid by Saalwaechter totaled $51,750.60.

42. As previously disclosed, the property located at 109 S. Cardinal Heights, Dadeville, Alabama was originally purchased by Cloverland Drugs from its operating account maintained at Sterling Bank totaling $839,545.42 via two Fed wires in July 2015; $10,000 and $829,545.29, respectfully. On February 26, 2016, the property was transferred from Cloverland Drugs to David Saalwaecheter and his spouse via a warranty deed. Saalwaechter executed a personal mortgage in the amount of $417,000 from Regions Bank on February 26, 2016 and pledged the property as collateral. A disbursement totaling $406,865.89 was paid from the closing proceeds into the Cloverland Drugs operating account maintained by Sterling Bank on or about February 26, 2016. The remaining Cloverland Drugs operating funds, totaling $432,679.53 used to purchase the property in 2015 were not returned to Cloverland Drugs when the property changed legal ownership from Cloverland Drugs to the Saalwaechters. It is unknown from the records reviewed, if Cloverland Drugs recognized the real estate transaction as a taxable loss or if a taxable benefit was recognized by Saalwaechter as non-cash compensation on his tax returns for calendar year

14

2016. After the September 30, 2016 closing, net proceeds (sales price, less closing costs and mortgage payoff) totaled $386,680.13. These funds totaling $386,680.13 were paid by the closing agency to the J. Doyle Fuller Trust Account and are the subject of this Complaint.

43.     Prior to the closing of the sale of the property, an agreement was made between the United States and J. Doyle Fuller (attorney for Cloverland Drugs and the Saalwaechters) that the proceeds of the sale would be deposited into Mr. Fuller's trust account rather than be dispersed to the Saalwaechters or Cloverland Drugs. The government made clear its assertion that the property was purchased with proceeds of the fraudulent activity and therefore were subject to forfeiture, however, agreed it would be beneficial for both parties to allow the sale to proceed in order to preserve the value of the property. Attorney Fuller agreed to hold the proceeds of the sale in his trust account pending the resolution of any forfeiture action and/or settlement of the matter. To date, the parties have been unable to reach a settlement.

**Conclusions**

44.     Between from approximately July 2014 through June 2016, David Saalwaechter, Marc Batson, Lisa Batson, Carl Edmiston; Alison Edmiston; Bart Edmiston; Todd Edmiston; Louis O. Priester, III; Lisa Priester; Brent Cherry; Joy Cherry; and, their associated businesses, Cloverland Drugs, Inc. (a/k/a Cloverland Pharmacy); WR83, LLC; RHYOLITE Investments, LLC; and, CJE Enterprises, LLC., engaged in violations of federal criminal laws including 18 U.S.C. §§ 1341 and 1343, prohibiting the use of mailings or interstate or foreign wires in connection with any scheme to defraud; 18 U.S.C. § 1347 prohibiting any scheme to defraud a health care benefit program; 18 U.S.C. §§ 1956 and 1957 prohibiting various money laundering activities, as defined in the statutes; and 42 U.S.C. § 1320a-7(b) prohibiting anyone from soliciting

or receiving any remuneration (including any kickback, bribe, or rebate) in exchange for referrals under a Federal health care program.

## CLAIM FOR RELIEF

WHEREFORE, the United States prays that the defendant be condemned and forfeited to the United States as proceeds traceable to violations of mail fraud, wire fraud, health care fraud, money laundering, and the anti-kickback statute; that the United States be awarded its costs and disbursements in this action and for such other and further relief as the Court deems proper and just.

Respectfully submitted this the 9th day of June, 2021.

SANDRA J. STEWART
ACTING UNITED STATES ATTORNEY

Gregory O. Griffin, Jr.
Assistant United States Attorney

Address of Counsel:
Office of the United States Attorney
Middle District of Alabama
Post Office Box 197
Montgomery, Alabama 36101-0197
Telephone: (334) 223-7280
Facsimile: (334) 223-7106
E-mail: Gregory.Griffin@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

STATE OF ALABAMA            )

COUNTY OF MONTGOMERY        )

## VERIFICATION

16

I, J. Deanne Lindsey, hereby verify and declare under penalty of perjury that I am a Special Agent with the United States Federal Bureau of Investigation, that I have read the foregoing Verified Complaint and know the contents thereof, and that the matters contained in the Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information are the official files and records of the United States and other law enforcement agencies, information supplied to me by other law enforcement officers and the investigation of this case by myself and others.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct this 9 day of June, 2021.

J. Deanne Lindsey, Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this the 9 day of June, 2021.

Notary Public
Commission Expires: 8·10·21